UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERMAINE FRANKLIN JR.
JERMAINE FRANKLIN JR., INC.,

                Plaintiff,                         Case No. 19-10137

v

                                                 Honorable Thomas L. Ludington

MARK F. HAAK,

                Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AMENDED COMPLAINT

On January 14, 2019, Plaintiffs Jermaine Franklin, Jr. ("Franklin") and Jermaine Franklin Jr., Inc., ("JFJR") filed a complaint against Defendant Mark F. Haak. ECF No. 1. Plaintiffs claim that Defendant was Franklin's former manager and is currently interfering with his boxing career. Plaintiffs later filed an Amended Complaint. ECF No. 18.

Defendant has filed a motion to dismiss Plaintiffs' Amended Complaint. ECF No. 19. For the following reasons, the motion will be granted in part and denied in part.

## I.

Franklin is a professional boxer who first met Defendant in 2014 after Franklin won the U.S. National Golden Glove amateur championship. That same month, Franklin entered into a Boxer-Manager Agreement (the "Agreement") with Defendant. Ex. 1, ECF No. 18-2.

The Agreement, which is quoted in full because of its relevance to the immediate questions, provides:

BOXER-MANAGER AGREEMENT

This Agreement is made this 16 day of December, 2014, in Pittsburgh, Pennsylvania, by and between Mark Haak of the state of Pennsylvania (hereinafter

"Manager") and Jermaine Franklin (Federal I.D. No. _____) of the state of Michigan (hereinafter "Boxer").

1. Employment of Boxer

   By this Agreement, Manager engages Boxer, and Boxer agrees for a period of 4 years and 6 months from the date of execution of this Agreement to render services exclusively for Manager in such boxing contests, exhibitions of boxing, and training exercises, whenever required by Manager, as Manager may from time to time direct.

2. Boxer's compensation.

   a. Manager will be paid 30% of all amounts derived by Boxer from any services Boxer may render under this Agreement.

   b. Manager hereby agrees to pay Boxer $10,000 at the time of the signing of this Agreement as a signing bonus

   c. Manager further agrees that during the first year of the contract, Manager will pay Boxer the sum of $1,200 per month on or before the first day of each month, commencing February 1, 2015, continuing through 2015, and concluding January 1, 2016 (12 payments).

   d. Manager agrees that during the first year of the contract, Boxer will have no duty to pay any share of any proceeds that Boxer receives from any services, that Boxer may render under this Agreement to Manager.

   e. Boxer acknowledges that Manager has no further responsibility to pay Boxer any money after the first year of the contract.

   f. Manager has no duty at any time to pay miscellaneous expenses including, but not limited to:
      • Training
      • Gas/mileage
      • Transportation
      • Insurance
      • Medical
      • Rent
      • Equipment, etc.

3. Option.

   Boxer hereby grants to Manager an unconditional option to extend this Agreement an additional two years immediately following the aforementioned five year period upon payment by Manager to Boxer the sum of $25,000 on or before the expiration of the five year anniversary of this Boxer-Manager Agreement.

4. Manager's Efforts.
   Manager agrees to use his best efforts to secure remunerative boxing contests for Boxer.

5. Boxer's Compliance.
   Boxer agrees to fulfill any contract entered into on Boxer's behalf by Manager with Boxer's knowledge during the term of this Agreement.

6. Injuries/Extensions
   If Boxer is unable or unwilling to box due to injuries, substance abuse, or any other reason, this Agreement is automatically extended for a period of time equal to the amount of time Boxer is/was unable or unwilling to box.

7. Exclusivity of Contract.
   Boxer agrees that Boxer will not during the continuance of this Agreement take part in any boxing contests or other exhibitions, perform or otherwise exercise Boxer's talent in any manner or place, except as directed by Manager, and shall not allow Boxer's name to be used in any commercial enterprise without obtaining the prior, express, and written permission of Manager so to do.

8. Training and Travel.
   Boxer shall perform all training exercise, as Manager shall require and shall proceed and travel by any designated means of conveyance as and when required by Manager, for the purposes of this Agreement.

9. Uniqueness of Boxer's Services.
   It is agreed between the parties to this Agreement that the services of Boxer are extraordinary, exceptional, and unique.

10. Manager/Boxer Licensing.
    Manager and Boxer will become licensed when and where necessary, in the appropriate jurisdiction, at the appropriate time, at the discretion of Manager.

11. No waiver.
    The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as subsequently waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

12. Notices.
    Any notice provided for or concerning this Agreement shall be in writing and shall be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this Agreement.

13. Mandatory Arbitration.

   Any dispute under this Agreement shall be required to be resolved by binding arbitration of the parties hereto. If the parties cannot agree on an arbitrator, each party shall select one arbitrator and both arbitrators shall then select a third. The third arbitrator so elected shall arbitrate said dispute. The arbitration shall be governed by the rules of the American Arbitration Association then in force and effect.

14. Entire Agreement.

   This Agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent incorporated in this Agreement.

15. Modification of Agreement.

   Any modification of this Agreement or additional obligation assumed by either party in connection with this Agreement shall be binding only if placed in writing and signed by each party or an authorized representative of each party.

16. Assignment of Rights.

   The rights of each party under this Agreement are personal to that party and may not be assigned or transferred to any other person, firm, corporation, or other entity without the prior, express, and written consent of the other party.

17. Confidentiality.

   Manager and Boxer agree to maintain confidentiality with regard to this Agreement. The terms and conditions of this Agreement will not be shared with any third parties, other than those that need to know for purposes of licensing or registration or otherwise conducting the business of boxing and managing,

18. Health of Boxer.

   Boxer hereby represents that he has no health issues that impact his ability to box. This representation is a material representation upon which Manager relies in signing this contract.

ECF No. 18-2. The Agreement is signed by Defendant on a line labelled "Manager" and by Franklin on a line labelled "Boxer."

**A.**

From December 2014 until July 2018, Franklin worked under Defendant's management. During that time, he did not lose any fights. He won 17. Plaintiffs allege that Defendant never compensated Franklin more than three thousand dollars for a fight.

In August 2018, Franklin's mother informed Defendant on behalf of Franklin that he was ending the boxer-manager relationship. ECF No. 18 at PageID.187. Franklin enlisted Aaron Alfaro as his spokesperson who then contacted Defendant, informing him that Franklin wished to end the boxer-manager relationship. *Id.* Alfaro also contacted an attorney, Katrina I. Crawley, to review the Boxer-Manager Agreement. Crawley concluded that the Agreement violated several provisions of law and was therefore void.

In late October 2018, Franklin entered into a promotional contract with Salita Promotions ("SP"). *Id.* at PageID.190. On December 30, 2018, he "entered a Bout Agreement with SP to fight on February 15, 2019 as the main event on SHOWBOX telecast." *Id.* However, according to Plaintiffs, Defendant contacted the Senior Vice President of Showtime, Inc., Gordon Hall, and explained that he was Franklin's manager. Defendant stated that as Franklin's manager, he had not granted approval for Franklin to participate in the February 15 fight. Consequently, Showtime withdrew Franklin from the fight. *Id.* at PageID.192.

**B.**

On January 14, 2019, Plaintiffs filed their complaint against Defendant. ECF No. 1. One month later, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. ECF No. 8. Plaintiffs claimed that Franklin had lawfully terminated the Agreement and that Defendant's conduct risked preventing Franklin from participating in a fight on April 13, 2019 and in subsequent fights. That same day, the Court issued an order directing Defendant to respond to Plaintiff's motion by February 25, 2019 and scheduling a hearing on March 1, 2019. ECF No. 9.

On March 1, 2019, a stipulated order was entered in which the parties agreed to extend the due date of Defendant's response to March 21, 2019 and to reschedule the motion hearing for March 26, 2019. ECF No. 11. In the stipulation, Defendant agreed to not interfere with Franklin's ability to participate in the April 13, 2019 fight. *Id.* at PageID.70.

On March 26, 2019, the motion for a temporary restraining order and preliminary injunction was discussed in chambers. The parties agreed to exchange certain discovery materials and to allow Plaintiffs to file an amended complaint. ECF No. 17. The parties represented that Franklin's performance in his upcoming boxing match on July 15, 2019 would assist in determining the best course forward for both parties. Accordingly, a status conference was scheduled for July 30, 2019, two weeks after the match. The next month, Plaintiffs filed an Amended Complaint. ECF No. 18. Defendant subsequently filed a motion to dismiss the Amended Complaint. ECF No. 19.

At the July 30, 2019 conference, it was determined that a further exchange of discovery was necessary. The parties represented that the results of Franklin's next match, scheduled for October 5, 2019, would further assist in determining the best course forward for both parties. Accordingly, a status conference was scheduled for October 16, 2019. At the conference, the parties represented that they had not reached a resolution of the case. Accordingly, Defendant's motion to dismiss Plaintiffs' Amended Complaint will be addressed.

## II.

Defendant has moved for dismissal of Plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the

non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not provide "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678–79 (quotations and citation omitted).

### III.

### A.

The first count of Plaintiffs' Amended Complaint alleges that Defendant violated the Muhammed Ali Boxing Reform Act (the "Ali Act"). Congress passed the Ali Act in 2000, "to improve and expand the system of safety precautions that protects the welfare of professional boxers." 15 U.S.C. §6302. It was intended to "address certain troubling business practices within the industry", to "sanitize the boxer/manager/promoter relationship and to build public confidence in the sport of boxing." *Muhammad Ali Boxing Reform Act: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 16 (July 23, 1998). During Senate hearings, U.S. Senator Richard H. Bryan stated, "The relationships that exist between boxers, promoter, managers, and the sanctioning bodies is often so muddled that some boxers spend more time fighting in court than they do in the ring." *Business Practices in the Professional Boxing Industry: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 3 (Mar. 24, 1998).

The Ali Act defines a manager as "a person who receives compensation for service as an agent or representative of a boxer." 15 U.S.C. §6301(5). A manager is a fiduciary to the boxer and "is supposed to have some degree of independent judgment." *Business Practices in the Professional Boxing Industry: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 29 (Mar. 24, 1998). The boxer typically "hires a manager and a trainer and generally…pays them a combined percentage of 33.3 percent of what the boxer receives for the fight." *Id.* at 9.

The Ali Act defines a promoter as "the person primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. §6301(9). During the Senate hearings, attorney Fredric G. Levin[1] explained that:

> The promoter is responsible for arranging a fight between boxers. Usually, one particular promoter has an exclusive arrangement with a particular boxer. In other words, that promoter will be involved in every one of the particular boxer's matches.

*Business Practices in the Professional Boxing Industry: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 9 (Mar. 24, 1998). He further explained that:

> There is a definite conflict of interest between the fighter and his promoter…The job of the promoter is to go out and get as much money as he possibly can get from television, from the site, from foreign rights, from sponsorships, etc., and then to pay the fighter as little as he possibly can. The reason for this is the difference goes to the promoter.

*Id.* Due to this conflict of interest, the promoter's relationship with the boxer differs from the manger's relationship with the boxer.

> Typically managers and trainers are paid based upon a percentage of the boxer's purse, which is permissible. One difference is that [a] promoter is the payor, and is generally not in a fiduciary relationship with the boxer, while a manager is in a fiduciary relationship.

---

[1] Mr. Levins testified as an attorney and negotiator for Roy Jones Jr., a light heavyweight champion.

*Id.* at 28.

Senator Richard H. Bryan spoke about potential collusion between promoters and managers and summarized the statements of one of the hearing's witnesses as follows:

> One witness testified that he was aware that certain promoters have been taking the position that they will promote a given boxer or provide him with lucrative bouts only if the boxer signs with a specified manager. In addition, the witness testified to situations where a manager is actually a paid employee of a promoter or even a relative of the promoter. Given that one of the responsibilities of a manager is to represent a boxer in certain contract negotiations with a promoter, I am perplexed as to how this type of unethical arrangement can advance the interests of the professional boxer or the boxing industry in general.

*Muhammad Ali Boxing Reform Act: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 16 (July 23, 1998).

The Senate Report of the Ali Act provides:

> The final protection for boxers established in this section is the prohibition of conflicts of interests between promoters and managers. Most boxers have limited educational backgrounds and, as the top promoters in the sport readily concede, are no match for experienced promoters during contractual discussions. While the role of managers has been diminished in the sport over the last decade, it remains essential that managers, if a boxer does hire a manager, that the manager serve and protect the interests of the boxer. They should not be serving the financial interests of the promoter, while simultaneously taking a 33% earnings cut from the boxer for biased representation as manager. It is not plausible for a boxer to receive proper representation and counsel from a manager if the manager is also on the payroll of a promoter. This is an obvious conflict of interest which works to the detriment of the boxer and the advantage of the promoter. The Committee received testimony about instances wherein boxers had suffered significant career and economic injury due to their manager's clear conflicting interests. A manager must be a determined advocate for the boxer's interests and not be influenced by financial inducements from a promoter. This provision tracks a similar regulation of many State boxing commissions.

S. Rep. No. 106-83, at 11 (1999).

Plaintiffs contend that Defendant violated provisions 15 U.S.C. §6308(b), 15 U.S.C. 6307e(b), and 15 U.S.C. 6307e(a)(1)-(3) of the Ali Act. Each provision will be addressed in turn.

**1.**

To prevent conflicts of interest between promoters and managers, the Ali Act mandates a complete separation between the two. It provides:

**(b) Firewall between promoters and managers**

> **(1) In general**
>
> It is unlawful for--
>
>> **(A)** a promoter to have a direct or indirect financial interest in the management of a boxer; or
>>
>> **(B)** a manager--
>>
>>> **(i)** to have a direct or indirect financial interest in the promotion of a boxer; or
>>>
>>> **(ii)** to be employed by or receive compensation or other benefits from a promoter, except for amounts received as consideration under the manager's contract with the boxer.
>
> **(2) Exceptions**
>
> Paragraph (1)--
>
>> **(A)** does not prohibit a boxer from acting as his own promoter or manager; and
>>
>> **(B)** only applies to boxers participating in a boxing match of 10 rounds or more.

15 U.S.C. §6308(b)(1).

**a.**

Defendant contends that 15 U.S.C. §6308(b)(1)(A) is inapplicable because Defendant was Franklin's manager, not his promoter. Plaintiffs argue that to the contrary, Defendant acted as the "de facto promoter of Plaintiff and Plaintiff's opponents" because Defendant paid other "so-called promoters, opponents and managers" to fight Franklin. ECF No. 23 at PageID.278-279.

Defendant is not a promoter as defined under the Ali Act. Neither Plaintiffs' original complaint nor their amended complaint allege in any way that Defendant was "primarily responsible for organizing, promoting, and producing a professional boxing match." 15 U.S.C. §6301(9). Instead, the Amended Complaint focuses on Defendant's work as a manager. It references Franklin and Defendant's relationship as a "boxer-*manager* relationship." ECF No. 18 at PageID.184, PageID.187 (emphasis added). It provides that "Defendant Haak *managed* ALL aspects of Franklin's boxing matches for 3.7 [years]." *Id.* at PageID.193 (emphasis added). It further provides that "Haak had a duty of care and loyalty to Franklin to *manage* his boxing career for Franklin's benefit" and that Haak breached "the duty of care and loyalty owed by a *manager* to his fighter." *Id.* at PageID.199, PageID.200 (emphasis added).

Nothing in Plaintiffs' pleadings support the notion that Defendant was primarily responsible for the production of any professional boxing match. Plaintiffs base their entire argument on the fact that Defendant allegedly made payments to promoters, Franklin's opponents, and the managers of Franklin's opponents. This allegation without more does not bring Defendant within the ambit of the Ali Act's definition of a promoter as the individual primarily responsible for organizing and producing a boxing match. Defendant managed Franklin, not Franklin's boxing matches.

**b.**

15 U.S.C. §6308(b)(1)(B) applies to Defendant because it regulates managers. Specifically, it prohibits a manager from having a "direct or indirect financial interest in the promotion of a boxer." Accordingly, a manager has not violated §6308(b)(1)(B) solely by making a payment to a promoter. The manager must receive a financial interest in the promotion of a boxer. Without receiving a financial interest, the manager has not implicated §6308(b)(1)(B).

Plaintiffs repeat multiple times throughout their Amended Complaint that Defendant made payments to promoters. However, not once do Plaintiffs claim that Defendant received a financial interest in the promotion of Franklin in exchange for making these alleged payments. Defendant explains that he made payments to promoters because "the manager of a debut boxer must generally pay a promoter for a spot on the fight card." ECF No. 25 at PageID.295. Defendant represents that in exchange for his payments, promoters placed Franklin in fights.

Plaintiffs have not pled that Defendant held a financial interest in the promotion of Franklin. Accordingly, Plaintiffs' claim under §6308(b)(1)(B) will be dismissed.

**2.**

15 U.S.C. §6307e(b) addresses required disclosures by a promoter. It provides:

A *promoter* shall not be entitled to receive any compensation directly or indirectly in connection with a boxing match until it provides to the boxer it promotes--

> **(1)** the amounts of any compensation or consideration that a promoter has contracted to receive from such match;
>
> **(2)** all fees, charges, and expenses that will be assessed by or through the promoter on the boxer pertaining to the event, including any portion of the boxer's purse that the promoter will receive, and training expenses; and
>
> **(3)** any reduction in a boxer's purse contrary to a previous agreement between the promoter and the boxer or a purse bid held for the event.

15 U.S.C. §6307e(b) (emphasis added).

Defendant argues that 15 U.S.C. §6307e(b) is inapplicable because he is Franklin's manager, not his promoter. As explained above, the Amended Complaint does not allege that Defendant was a promoter as defined under the Ali Act. Accordingly, Plaintiffs' allegations of Defendant's violations of 15 U.S.C. §6307e(b) will be dismissed.

**3.**

15 U.S.C. 6307e(a)(1)-(3) addresses required disclosures by a promoter to the boxing commission of the state regulating a boxing match. It provides:

> A *promoter* shall not be entitled to receive any compensation directly or indirectly in connection with a boxing match until it provides to the boxing commission responsible for regulating the match in a State a statement of--
>
>> **(1)** a copy of any agreement in writing to which the promoter is a party with any boxer participating in the match;
>>
>> **(2)** a statement made under penalty of perjury that there are no other agreements, written or oral, between the promoter and the boxer with respect to that match; and
>>
>> **(3)(A)** all fees, charges, and expenses that will be assessed by or through the promoter on the boxer pertaining to the event, including any portion of the boxer's purse that the promoter will receive, and training expenses;
>>
>> **(B)** all payments, gifts, or benefits the promoter is providing to any sanctioning organization affiliated with the event; and
>>
>> **(C)** any reduction in a boxer's purse contrary to a previous agreement between the promoter and the boxer or a purse bid held for the event.

15 U.S.C. 6307e(a)(1)-(3) (emphasis added).

As explained above, the Amended Complaint does not allege that Defendant was a promoter as defined under the Ali Act. Accordingly, Plaintiffs' allegations of Defendant's violations of §6307e(a)(1)-(3) will be dismissed.

## B.

The second count of Plaintiffs' Amended Complaint alleges that Defendant violated the Boxer's Bill of Rights. Plaintiffs contend that it "provides rights to protect the boxer from exploitation and to provide minimum standards for member states boxing commissions." ECF No. 18 at PageID.194. They further contend that Defendant violated Section 7 of the Boxer's Bill of Rights by "failing to disclose information regarding Plaintiff Franklin's fights." ECF No. 18 at PageID.194.

Plaintiffs argue that the Boxer's Bill of Rights is enforceable because it has been adopted by the Association of Boxing Commissions ("ABC"). Plaintiffs represent that:

> The Association of Boxing Commission is a not for profit organization that is comprised of, and governed by, delegates of state, provincial and tribal athletic commissions in both the United States and Canada. Member states…adhere to the ABC's constitution and bylaws…The ABC adopted the Boxer's Bill of Rights.

ECF No. 23 at PageID.281. The Ali Act references the ABC and provides:

> [T]he Association of Boxing Commissions (ABC) shall develop and shall approve by a vote of no less than a majority of its member State boxing commissioners, guidelines for minimum contractual provisions that should be included in bout agreements and boxing contracts. It is the sense of the Congress that State boxing commissions should follow these ABC guidelines.

15 U.S.C. §6307a.

Plaintiffs do not furnish any legal authority for the assertion that the Boxer Bill of Rights is enforceable under either federal or state law. The Ali Act references the ABC and State boxing commissions, but it does not extend enforcement authority to these boxing commissions. It provides "*It is the sense of the Congress* that State boxing commissions should follow these ABC guidelines." 15 U.S.C. §6307a (emphasis added). Many courts have determined that the language "it is the sense of Congress" is precatory and non-binding. *See Yang v. Cal. Dep't of Social Serv.*, 183 F.3d 953, 961–62 (9th Cir. 1999) ("[T]he sense of Congress provision amounts to no more than non-binding, legislative dicta."); *Monahan v. Dorchester Counseling Center, Inc.*, 961 F.2d 987, 994–95 (1st Cir. 1992) ("[U]se of the term 'should' and 'the sense of Congress' indicate that the statute is merely precatory.").

Michigan law permits the director of Michigan's boxing commission to adopt ABC regulations, but it does not incorporate the Boxer's Bill of Rights. It provides:

> The director shall review the rules of the Association of Boxing Commissions before he or she promulgates rules for the administration of this act and may adopt

by reference any of the rules of the Association of Boxing Commissions that are not inconsistent with this act.

M.C.L. 338.3622(2). Plaintiffs have not provided any authority to suggest that the Michigan commission has incorporated by reference the ABC's adoption of the Boxer's Bill of Rights or that an individual may bring a private right of action to enforce it.

Plaintiffs have presented no laws or regulations at the state or federal level that provide for enforcement of the Boxer's Bill of Rights. Accordingly, the second count of Plaintiffs' Amended Complaint will be dismissed.

## C.

The third count of Plaintiffs' Amended Complaint alleges that Defendant violated several Pennsylvania laws regulating competitive boxing. Defendant contends that Pennsylvania law does not apply because Michigan is the forum state of this Court and Pennsylvania does not have an interest in having its law applied.

Even if Pennsylvania law applied however, the Pennsylvania Boxing Act and its accompanying regulations do not provide for a private right of action. Chapter 13 of the Act is entitled "Enforcement" and grants the Pennsylvania State Athletic Commission powers to regulate boxing within Pennsylvania. 5 Pa.C.S.A. §1301–1305. However, nowhere does the Act grant a private party the authority to bring a claim.

Accordingly, the third count of Plaintiffs' Amended Complaint will be dismissed.

## D.

The fourth count of Plaintiffs' Amended Complaint bears the heading "Breach of Contract – Mismanagement." ECF No. 18 at PageID.195. It provides:

Defendant mismanaged Plaintiff Franklin's boxing career in the following manner:

    a.   Failure to adhered [sic] to the Boxers Bill of Rights;

b.  Failure to notify Franklin of expenditures against his purse;

c.  Failure to secure all bout agreements;

d.  Failure to comply with state rules and regulations;

e.  Failure to disclose payments and expenditures made to Franklin's opponents;

f.  Failure to disclose payments and expenditures to promoters;

g.  Failure to provide an accounting to Franklin;

h.  Failure to issue or provide 1099-Misc., for earned or other income for years 2014-2017;

i.  Failure to serve Franklin's best financial interest in negotiations;

j.  Failure to inform Franklin of negotiations where Defendant paid opponents, promoters, and others and would hold Franklin liable for those amounts;

k.  Failure to notify Franklin of expenditures to Franklin's trainer, parents, and other third parties where Franklin would be liable for those amounts;

l.  Failure to accept an offer from a promoter for Franklin to fight on the undercard of a Claressa Shileds' [sic] fight because of Defendant's biased opinion of female fighters, as he stated he would not allow Plaintiff to fight on a woman's undercard, whether or not it was in Plaintiff's best interest to accept such a fight;

    and

m.  Other failures by Defendant that shows a pattern and practice of neglecting the best interest of Franklin and shows self-dealing by Defendant.

ECF No. 18 at PageID.195-196.

Plaintiffs have not identified the provisions of the Agreement Defendant has breached. A review of Plaintiffs' allegations and the Agreement reveal that the Agreement does not provide that Defendant must perform any of the behavior itemized above.[2] Nowhere does it require

---

[2] Section 10 of the Agreement states that "Manager and Boxer will become licensed when and where necessary…at the discretion of the Manager." Subparagraph (d) of Plaintiffs' claim of breach of contract claims that Defendant failed

Defendant to provide an accounting, enter into Bout Agreements, nor notify Franklin of expenditures.

Plaintiffs cannot sustain a breach of contract claim when the claim is not grounded in the contract itself. *See Barney v. PNC Bank*, 2012 WL 12887667, *9 (N.D. Ohio Mar. 30, 2012) ("Plaintiffs' Complaint suffers from flaws stemming from their failure to…identify the specific contractual provisions that have been breached."). Accordingly, Count Four of the Amended Complaint will be dismissed.

## E.

The fifth count of the Amended Complaint bears the heading "Fraud and Misrepresentation." ECF No. 18 at PageID.196. It provides:

> Defendant Haak misrepresented he [sic] was a licensed boxing manager in the State of Pennsylvania. Haak knew that he had not held a valid manager's license in the State of Pennsylvania since 2001, and was not a licensed manager in 2014 at the time the Agreement was signed. In reliance on Haak's misrepresentation Plaintiff Franklin signed the Agreement.

ECF No. 18 at PageID.196-197 (numerals omitted).

Federal Rule of Civil Procedure 9 requires that when alleging fraud, "a party must state with particularity the circumstances constituting fraud…" Fed. R. Civ. Pr. 9(b). The Sixth Circuit has explained that a complaint alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (quoting *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D. Ohio 1998)). "[A] plaintiff must at minimum allege the time, place and contents of the

---

to "comply with state rules and regulations." However, the Agreement states that licensing is to be performed at the "discretion of the Manager." While Defendant's alleged failure to become licensed may have consequences in Pennsylvania, it does not bear such consequences under the Agreement.

misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984).

Plaintiffs have not pled their claim of fraud with particularity. Though the Amended Complaint alleges that "Defendant Haak misrepresented he [sic] was a licensed boxing manager," the clarity of the assertion is undermined by other representations in the Amended Complaint and Plaintiffs' briefing. In the facts portion of the Amended Complaint, Plaintiffs allege that "Franklin was told that Defendant Haak was a licensed boxing manager in the State of Pennsylvania, and had managed several boxers' careers." ECF No. 18 at PageID.186. The statement does not specify who claimed that Haak was a licensed boxing manager. It is unclear whether Defendant himself made this statement or a third party. Additionally, in their response to Defendant's first motion to dismiss, Plaintiffs' brief provides:

> Plaintiff and Defendant had conversations, and negotiations prior to Defendant drafting the Boxer-Manager agreement. Plaintiff recalls during these conversations, (where others where [sic] present) statements were made that Defendant was a "licensed boxing manager," and a practicing attorney in Pennsylvania. Plaintiff is not sure if the statements were made by Defendant, or made by someone else about the Defendant, or both, but Defendant was involved in these conversations. Even if Defendant did not make the false statement directly, he did absolutely nothing to refute or correct the statement that he was a currently licensed boxing manager; he let this falsehood stand.

ECF No. 15 at PageID.158-159. Plaintiffs' response to Defendant's second motion to dismiss does not clarify the allegation, but rather, further obscures the issue. It provides:

> Plaintiff…was told Defendant was a licensed manager and a licensed attorney…A licensed boxing manager and an attorney were critical considerations Plaintiff said he relied on in signing the Boxer-Manager agreement. Whether Plaintiff can remember that these statements came directly from Defendant, or from someone else in a group setting where Defendant was present or not, the [Amended Complaint] has enough facts, reviewed in the light most favorable to Plaintiff, Plaintiff has a legitimate claim for either fraud or misrepresentation, or both and further discovery is warranted.

ECF No. 23 at PageID.284.

Contrary to Plaintiffs' argument, the fifth count of the Amended Complaint does not present sufficient facts to state a claim for relief. Even when bolstered by Plaintiffs' arguments in their first and second briefings, the pleadings do not meet the mark. Plaintiffs have not identified the party that made the statement nor have they pled where and when these allegedly false statements were made. Accordingly, the fifth count of the Amended Complaint will be dismissed.

## F.

The sixth count of the Amended Complaint bears the heading "Tortious Interference with Business Relationship or Expectancy – SP." ECF No. 18 at PageID.197. Plaintiffs contend that upon learning of Franklin's business relationship and promotional contract with Salita Promotions, Defendant "sent a threatening letter to SP, for the sole purpose of interfering with Plaintiffs' business relationships and the promotions contract." *Id.* It further alleges that Defendant "also attempted to cut a backdoor deal with SP directly, in late January 2019 after the February 15th fight was cancelled." *Id.*

To establish tortious interference with a business relationship, a party

[M]ust establish that the interference was improper. In other words, the intentional act that defendants committed must lack justification and purposely interfere with…plaintiffs' business relationship or expectancy.

*Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 578 (Mich. Ct. App. July 3, 2003). "Improper means illegal, unethical, or fraudulent." *Mich. Podiatric Med. Ass'n v. Nat'l Foot Care Program, Inc.*, 438 N.W.2d 349, 355 (Mich. Ct. App. Mar. 20, 1989) (quoting *Formail, Inc. v. Cmty. Nat'l Bank of Pontiac*, 421 N.W.2d 289 (1988)). "[D]efendants motivated by legitimate personal and business reasons are shielded from liability against this cause of action." *Formail, Inc.*, 421 N.W.2d at 293 (quoting *Christner v. Anderson, Nietzke & Co., PC*, 401 N.W.2d 641 (1986)).

Defendant's correspondence with SP explains his business interest in the Agreement, which provides:

> 7. Exclusivity of Contract.
> Boxer agrees that Boxer will not during the continuance of this Agreement take part in any boxing contests or other exhibitions, perform or otherwise exercise Boxer's talent in any manner or place, except as directed by Manager, and shall not allow Boxer's name to be used in any commercial enterprise without obtaining the prior, express, and written permission of Manager so to do.

ECF No. 18-2 at PageID.205.

As explained above, a promoter organizes boxing matches. Paragraph 7 does not permit Franklin to box except as authorized by Defendant. Franklin entering into a contract with SP directly implicates Defendant's exclusive right to direct when and where Franklin was permitted to box.

Plaintiffs contend that the fact that "Plaintiff had to file a lawsuit to obtain permission to fight is reprehensible." ECF No. 23 at PageID.285. Plaintiffs are entitled to that opinion. However, Franklin signed the Agreement granting Defendant authority to determine when and where he was permitted to box. Franklin entered into an agreement with SP and by so doing, potentially breached the Agreement. Accordingly, Defendant had legitimate reasons to contact SP and to notify them of his contract with Franklin.

## G.

The seventh count of the Amended Complaint bears the heading "Tortious Interference with Business Relationship or Expectancy – SHOWTIME." *Id.* Plaintiffs allege that on December 30, 2018, "SP and Franklin entered into a Bout Agreement for Franklin to fight on SHOWBOX on February 15th." *Id.* They further allege that Defendant sent a letter to Gordon Hall, the Senior Vice President of Showtime, which provides:

Dear Mr. Hall:

Please allow this letter to confirm that I am the manager of Jermaine Franklin, a young heavyweight contender. I am presently in the midst of a management contract dispute with Mr. Franklin. I will be initiating litigation against Mr. Franklin shortly to confirm the validity of the contract.

I recently learned that you have been in contact with Dmitry Salita, who claims to be his promoter. Mr. Franklin ostensibly signed an agreement with Mr. Salita for promotional rights. Any such agreement with Mr. Salita was made without my authorization or consent.

Pursuant to my contract, I do not authorize Mr. Franklin to fight until our lawsuit is resolved.

I request that in the interim you refrain from putting Mr. Franklin on any of your fight cards.

Please call me with any questions or concerns.

Very truly yours,

Mark F. Haak

ECF No. 18-7. The letter is dated December 18, 2018.

Plaintiffs allege that Defendant sent the letter "for the sole purpose of preventing Franklin from fighting; and to interfere with Plaintiffs' relationship with SP and Showtime, hindering Franklin's career, boxing reputation, current [sic] and future earnings potential." ECF No. 18 at PageID.198. However, as explained above, Defendant had a legitimate business interest in the Agreement. His correspondence notifying Showtime of the Agreement was justified.

In their response brief, Plaintiffs level a significant accusation against Defendant. It provides:

Defendant starts the letter with a lie '[p]lease allow this letter to confirm that **I am the manager** of Jermaine Franklin…' The fact is Plaintiff had terminated Defendant as his manager (whether it was done prematurely or not) in August 2018.

ECF No. 23 at PageID.285 (emphasis in original). Plaintiffs accuse Defendant of lying in his letter to Showtime, but in the next sentence, Plaintiffs acknowledge that Franklin may have terminated his manager relationship with Defendant "prematurely."

The Agreement has no termination provision. Plaintiffs are presumably contending that the Agreement terminated when Andrea Lamar and Aaron Alfaro informed Defendant that "Franklin was ending their boxer-manager relationship." ECF No. 18 at PageID.187. However, the Agreement does not provide that either party may unilaterally terminate the Agreement. Franklin signed the Agreement and its terms are as equally binding upon him as they are on the Defendant. Absent Plaintiffs demonstrating that the Defendant materially breached the Agreement, Defendant was and still remains Franklin's manager.

The seventh count of the Amended Complaint will be dismissed.

### H.

The eighth count of the Amended Complaint bears the heading "Tortious Interference with Business Relationship or Expectancy – Endorsements & Sponsorships." ECF No. 18 at PageID.199. Plaintiffs allege that from September 2018 to January 2019, Plaintiff Jermaine Franklin Jr., Inc. "had negotiated an endorsement and a sponsorship deal for the February 15th fight" that Defendant was aware of. After the February 15th fight was canceled, the sponsor and endorser withdrew their support. Plaintiffs contend that "[b]ecause of Defendant's willful and intentional conduct Plaintiffs' [sic] suffered economic damage." *Id.*

As explained above, Defendant's actions in contacting SP and Showtime were for the purpose of protecting Defendant's interests under the Agreement. Accordingly, the loss of endorsements due to the cancellation of the February fight cannot be ascribed to him.

### I.

The ninth count of Plaintiffs' Amended Complaint alleges that Defendant breached his fiduciary duty of care and loyalty to Franklin. Plaintiffs claim that Defendant "made payments to opponents, promoters and other [sic] and deducted these amounts from Plaintiff Franklin's fight pursue [sic] without Franklins [sic] knowledge." ECF No. 18 at PageID.200. Plaintiffs further claim that Defendant failed to furnish an accounting of the monies earned by Franklin. Defendant contends that Plaintiffs' claim of breach of fiduciary duty should be dismissed because the Amended Complaint "does not allege the existence of any funds that Haak was obligated to account for." ECF No. 19 at PageID.259.

The Michigan Court of Appeals has held that "[d]amages may be obtained for a breach of fiduciary duty when a position of influence has been acquired and abused, or when confidence has been reposed and betrayed." *In re Duane v. Baldwin Trust*, 733 N.W.2d 419, 428 (Mich. Ct. Apps. Feb. 27, 2007) (quotations omitted). As noted above, a "manager is in a fiduciary relationship" with the boxer. *Business Practices in the Professional Boxing Industry: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 28 (Mar. 24, 1998). They "must be a determined advocate for the boxer's interests." S. Rep. No. 106-83, at 11 (1999).

An individual may seek an accounting from a fiduciary. *Cass County v. Shattuck*, 285 N.W. 454, 455–56 (1939); *Patrons' Mut. Fire Ins. Co. of Mich. v. Holden*, 222 N.W. 754, 755 (Mich. 1929). Defendant was Franklin's fiduciary and managed Franklin's finances. Accordingly, Franklin may pursue a claim that he is entitled to an accounting of Defendant's management of Franklin's finances.

## J.

The Amended Complaint's tenth count (erroneously labelled "Seventh Claim for Relief") bears the heading "Slander and Libel - Defamation." It provides:

> Defendant Haak made verbal statements to the news media that he had a valid management contract with Plaintiff Franklin, which Haak knew was false.
>
> Defendant Haak made written statements in his letters to SP and Showtime that were false and misleading, specifically that he had a valid management contract, was still the manager of Plaintiff and that he had initiated a lawsuit against Plaintiff.

ECF No. 18 at PageID.201 (numerals omitted). As explained above, the Agreement was still in force at the time that Defendants corresponded with SP and Showtime because it lacks an early termination provision. Accordingly, Defendant is not liable for defamation and the tenth count will be dismissed.

## IV.

Accordingly, it is **ORDERED** that Defendant's motion to dismiss, ECF No. 19, is **GRANTED IN PART** and **DENIED IN PART**.

It is further **ORDERED** that Counts One, Two, Three, Four, Five, Six, Seven, Eight, and Ten of Plaintiffs' Amended Complaint are **DISMISSED**.

Dated: January 21, 2020                    s/Thomas L. Ludington
                                           THOMAS L. LUDINGTON
                                           United States District Judge