UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERMAINE FRANKLIN JR.
JERMAINE FRANKLIN JR., INC.,

              Plaintiff,              Case No. 19-10137

v

                                    Honorable Thomas L. Ludington

MARK F. HAAK,

              Defendant.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR DECLARATORY JUDGMENT ON THE PLEADINGS**

On January 14, 2019, Plaintiffs Jermaine Franklin, Jr. ("Franklin") and Jermaine Franklin Jr., Inc., ("JFJR") filed a complaint against Defendant Mark F. Haak. ECF No. 1. Plaintiffs claim that Defendant was Franklin's former manager and that he is interfering with his boxing career. Plaintiffs later filed an Amended Complaint. ECF No. 18.

Defendant has filed a Motion for Declaratory Judgment on the Pleadings. ECF No. 31. For the following reasons, the motion will be granted in part and denied in part.

**I.**

Franklin is a professional boxer who first met Defendant in 2014 after Franklin won the U.S. National Golden Glove amateur championship. That same month, Franklin entered into a Boxer-Manager Agreement (the "Agreement") with Defendant. Ex. 1, ECF No. 18-2.

The Agreement, which is quoted in full because of its relevance to the immediate questions, provides:

BOXER-MANAGER AGREEMENT

This Agreement is made this 16 day of December, 2014, in Pittsburgh, Pennsylvania, by and between Mark Haak of the state of Pennsylvania (hereinafter

"Manager") and Jermaine Franklin (Federal I.D. No. _____) of the state of Michigan (hereinafter "Boxer").

1. Employment of Boxer
   By this Agreement, Manager engages Boxer, and Boxer agrees for a period of 4 years and 6 months from the date of execution of this Agreement to render services exclusively for Manager in such boxing contests, exhibitions of boxing, and training exercises, whenever required by Manager, as Manager may from time to time direct.

2. Boxer's compensation.
   a. Manager will be paid 30% of all amounts derived by Boxer from any services Boxer may render under this Agreement.

   b. Manager hereby agrees to pay Boxer $10,000 at the time of the signing of this Agreement as a signing bonus

   c. Manager further agrees that during the first year of the contract, Manager will pay Boxer the sum of $1,200 per month on or before the first day of each month, commencing February 1, 2015, continuing through 2015, and concluding January 1, 2016 (12 payments).

   d. Manager agrees that during the first year of the contract, Boxer will have no duty to pay any share of any proceeds that Boxer receives from any services, that Boxer may render under this Agreement to Manager.

   e. Boxer acknowledges that Manager has no further responsibility to pay Boxer any money after the first year of the contract.

   f. Manager has no duty at any time to pay miscellaneous expenses including, but not limited to:
      - Training
      - Gas/mileage
      - Transportation
      - Insurance
      - Medical
      - Rent
      - Equipment, etc.

3. Option.
   Boxer hereby grants to Manager an unconditional option to extend this Agreement an additional two years immediately following the aforementioned five year period upon payment by Manager to Boxer the sum of $25,000 on or before the expiration of the five year anniversary of this Boxer-Manager Agreement.

4. Manager's Efforts.
   Manager agrees to use his best efforts to secure remunerative boxing contests for Boxer.

5. Boxer's Compliance.
   Boxer agrees to fulfill any contract entered into on Boxer's behalf by Manager with Boxer's knowledge during the term of this Agreement.

6. Injuries/Extensions
   If Boxer is unable or unwilling to box due to injuries, substance abuse, or any other reason, this Agreement is automatically extended for a period of time equal to the amount of time Boxer is/was unable or unwilling to box.

7. Exclusivity of Contract.
   Boxer agrees that Boxer will not during the continuance of this Agreement take part in any boxing contests or other exhibitions, perform or otherwise exercise Boxer's talent in any manner or place, except as directed by Manager, and shall not allow Boxer's name to be used in any commercial enterprise without obtaining the prior, express, and written permission of Manager so to do.

8. Training and Travel.
   Boxer shall perform all training exercise, as Manager shall require and shall proceed and travel by any designated means of conveyance as and when required by Manager, for the purposes of this Agreement.

9. Uniqueness of Boxer's Services.
   It is agreed between the parties to this Agreement that the services of Boxer are extraordinary, exceptional, and unique.

10. Manager/Boxer Licensing.
    Manager and Boxer will become licensed when and where necessary, in the appropriate jurisdiction, at the appropriate time, at the discretion of Manager.

11. No waiver.
    The failure of either party to this Agreement to insist upon the performance of any of the terms and conditions of this Agreement, or the waiver of any breach of any of the terms and conditions of this Agreement, shall not be construed as subsequently waiving any such terms and conditions, but the same shall continue and remain in full force and effect as if no such forbearance or waiver had occurred.

12. Notices.
    Any notice provided for or concerning this Agreement shall be in writing and shall be deemed sufficiently given when sent by certified or registered mail if sent to the respective address of each party as set forth at the beginning of this Agreement.

> 13. Mandatory Arbitration.
> Any dispute under this Agreement shall be required to be resolved by binding arbitration of the parties hereto. If the parties cannot agree on an arbitrator, each party shall select one arbitrator and both arbitrators shall then select a third. The third arbitrator so elected shall arbitrate said dispute. The arbitration shall be governed by the rules of the American Arbitration Association then in force and effect.
>
> 14. Entire Agreement.
> This Agreement shall constitute the entire agreement between the parties and any prior understanding or representation of any kind preceding the date of this Agreement shall not be binding upon either party except to the extent incorporated in this Agreement.
>
> 15. Modification of Agreement.
> Any modification of this Agreement or additional obligation assumed by either party in connection with this Agreement shall be binding only if placed in writing and signed by each party or an authorized representative of each party.
>
> 16. Assignment of Rights.
> The rights of each party under this Agreement are personal to that party and may not be assigned or transferred to any other person, firm, corporation, or other entity without the prior, express, and written consent of the other party.
>
> 17. Confidentiality.
> Manager and Boxer agree to maintain confidentiality with regard to this Agreement. The terms and conditions of this Agreement will not be shared with any third parties, other than those that need to know for purposes of licensing or registration or otherwise conducting the business of boxing and managing,
>
> 18. Health of Boxer.
> Boxer hereby represents that he has no health issues that impact his ability to box. This representation is a material representation upon which Manager relies in signing this contract.

ECF No. 18-2. The Agreement is signed by Defendant on a line labelled "Manager" and by Franklin on a line labelled "Boxer."

**A.**

From December 2014 until July 2018, Franklin worked under Defendant's management. During that time, he did not lose a fight. He won 17. Plaintiffs allege that Defendant never compensated Franklin more than three thousand dollars for a fight.

In August 2018, Franklin's mother informed Defendant on behalf of Franklin that he was ending the boxer-manager relationship. ECF No. 18 at PageID.187. Franklin enlisted Aaron Alfaro as his spokesperson who then contacted Defendant, informing him that Franklin wished to end the boxer-manager relationship. *Id.* Alfaro also contacted an attorney, Katrina I. Crawley, to review the Boxer-Manager Agreement. Crawley concluded that the Agreement violated several provisions of law and was therefore void.

In late October 2018, Franklin entered into a promotional contract with Salita Promotions ("SP"). *Id.* at PageID.190. On December 30, 2018, he "entered a Bout Agreement with SP to fight on February 15, 2019 as the main event on SHOWBOX telecast." *Id.* However, according to Plaintiffs, Defendant contacted the Senior Vice President of Showtime, Inc., Gordon Hall, and explained that he was Franklin's manager. Defendant stated that as Franklin's manager, he had not granted approval for Franklin to participate in the February 15 fight. Consequently, Showtime withdrew Franklin from the fight. *Id.* at PageID.192.

**B.**

On January 14, 2019, Plaintiffs filed their complaint against Defendant. ECF No. 1. The complaint presented seven counts against Defendant, specifically one count of violation of the Pennsylvania Boxing Code, one count of fraud and misrepresentation, one count of tortious interference with a contract, two counts of tortious interference with a business relationship or expectancy, one count of breach of fiduciary duty, and one count of defamation. ECF No. 1.

One month later, Plaintiffs filed a motion for a temporary restraining order and preliminary injunction. ECF No. 8. Plaintiffs claimed that Franklin had lawfully terminated the Agreement and that Defendant's conduct risked preventing Franklin from participating in a fight on April 13, 2019 and in subsequent fights. That same day, the Court issued an order directing Defendant to respond to Plaintiff's motion by February 25, 2019 and scheduling a hearing on March 1, 2019. ECF No. 9.

On March 1, 2019, a stipulated order was entered in which the parties agreed to extend the due date of Defendant's response to March 21, 2019 and to reschedule the motion hearing for March 26, 2019. ECF No. 11. In the stipulation, Defendant agreed to not interfere with Franklin's ability to participate in the April 13, 2019 fight. *Id.* at PageID.70.

On March 26, 2019, the motion for a temporary restraining order and preliminary injunction was discussed in chambers. The parties agreed to exchange certain discovery materials and to allow Plaintiffs to file an amended complaint. ECF No. 17. The parties represented that Franklin's performance in his upcoming boxing match on July 15, 2019 would assist in determining the best course forward for both parties. Accordingly, a status conference was scheduled for July 30, 2019, two weeks after the match.

The next month, Plaintiffs filed an Amended Complaint pursuant to a stipulated order. ECF No. 18. The Amended Complaint removed the one count of tortious interference with a contract and added the following four counts: one count of violating the Mohammad Ali Boxing Reform Act, one count of violating the Boxer's Bill of Rights, and one count of breach of tortious interference with a business relationship. ECF No. 18.

Defendant subsequently filed a motion to dismiss the Amended Complaint as well as a counterclaim. ECF Nos. 19, 27. The Counterclaim included three counts. The first count sought a

declaratory determination that the Agreement "is valid, binding and enforceable." ECF No. 27 at PageID.329. The second count sought equitable estoppel to prevent Plaintiffs from denying the validity of the Agreement. The final count alleged that Plaintiffs breached the Agreement.

At the July 30, 2019 conference, it was determined that a further exchange of discovery was necessary. The parties represented that the results of Franklin's next match, scheduled for October 5, 2019, would further assist in determining the best course forward for both parties. Accordingly, a status conference was scheduled for October 16, 2019. At the conference, the parties represented that they had not reached a resolution of the case.

## C.

On January 21, 2020, the Court granted Defendant's motion to dismiss in part and denied it in part. The Court dismissed Plaintiffs' claim alleging violation of the Ali Act, finding that Defendant was a manager as defined under the act and that he did not have a financial interest in the promotion of Franklin. Plaintiffs' claim under the Boxer Bill of Rights was dismissed because the Boxer Bill of Rights is not enforceable under federal or state law. Their claim that the contract was invalid under the Pennsylvania Boxer Act was dismissed as well because the act did not provide for a private right of action. Plaintiffs' claims of breach of contract were dismissed because Franklin did not identify the provisions of the Agreement that Defendant had allegedly breached, and the Agreement did not provide that Defendant was required to perform any of the behaviors listed in Plaintiffs' complaint. The Court also dismissed Plaintiffs' claim of fraud because Plaintiffs did not plead it with particularity as required under Federal Rule of Civil Procedure 9. Plaintiffs' claims of tortious interference with a business relationship were dismissed because Defendant had a legitimate interest in the preservation of the Agreement. Finally, Plaintiffs' claim

of defamation was dismissed because the Agreement was still in force at the time that Defendants corresponded with SP and Showtime.

Plaintiffs' only surviving claim is that Defendant breached his fiduciary duty by failing to provide Franklin with an accounting.

### D.

Defendant has now filed a Motion for a Declaratory Judgment on the Pleadings based upon his Counterclaim. For the following reasons, the motion will be granted in part and denied in part.

### II.

"The standard of review for a [motion for] judgment on the pleadings [under rule 12(c)] is the same as that for a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). Courts must view the pleadings in the "light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). However, the court "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. State of Ohio, 193 F.3d 389, 400 (6th Cir. 1999).* A motion for judgment on the pleadings "is granted when no material issue of fact exists and the party making the motion is entitled to judgment as a matter of law." *Paskvan v. City of Cleveland Civil Serv. Comm'n*, 946 F.2d 1233, 1235 (6th Cir. 1991); *see also JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007).

Defendant specifically asks that the Court enter a declaratory judgment pursuant to the relief sought in his counterclaim. The Declaratory Judgment Act provides:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not

further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C.A. § 2201.

The Sixth Circuit has held that:

The Declaratory Judgment Act empowers the district court to entertain certain actions, but it does not compel it to exercise the jurisdiction thus granted to it. Discretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed.

*Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*, 16 F. App'x 433, 437 (6th Cir. 2001)

(citing to *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494 (1942)).

In determining whether entering a declaratory judgment would be appropriate, a court must consider:

1) when the judgment will serve a useful purpose in clarifying and settling the legal relationship in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declarations prayed.

*Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.,* 746 F.2d 323, 326 (6th Cir.1984). A Court should also consider the following five specific factors:

(1) whether the judgment would settle the controversy;

(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";

(4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction; and

(5) whether there is an alternative remedy that is better or more effective.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

### III.

Defendant asks that the Court issue a declaratory judgment finding that:

(1) the boxer-manager contract is valid

(2) Franklin is not permitted to unilaterally terminate the boxer-management contract

(3) Haak "was and still remains Franklin's manager,"

(4) there are two years and 310 days remaining in the contract term from entry of a declaratory judgment.

ECF No. 31 at PageID.382.

For the reasons provided below, the Agreement is determined to be valid and enforceable, but Defendant's remaining requests will be denied.

**A.**

"In Michigan, the essential elements of a valid contract are (1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Thomas v. Leja*, 187 Mich. App. 418, 422 (1991). Michigan courts "presume the legality, validity, and enforceability of contracts." *Coates v. Bastian Bros., Inc.*, 276 Mich. App. 498, 507 (2007). "This presumption includes the assumption that the individuals signing a contract were mentally competent at the time of the signing." *Metro. Life Ins. Co. v. Kelly*, 2017 WL 3085519, at *4 (E.D. Mich. July 20, 2017).

Defendant contends that "Franklin admits signing the boxer-manager contract, and his answer to the counterclaim and affirmative defenses allege no facts that would upset the presumption that the boxer-manager contract is valid. Thus, the pleadings establish a valid contract." ECF No. 31 at PageID.388.

Plaintiffs contend that to the contrary, the Agreement is invalid because Franklin did not participate in the Agreement negotiations, he relied on Haak's interpretation of the Agreement, and the Agreement fails to include "critical protections." ECF No. 34 at PageID.428.

**1.**

Plaintiffs' contention that Franklin's failure to participate in negotiation of the Agreement is without merit. Plaintiffs' response to Defendant's motion provides:

> The first time Franklin ever saw the Agreement was the day Haak flew him and his family to Pennsylvania to sign it. Given the undisputed fact that Franklin saw the Agreement for the first time when it was signed is proof that he did not participate in any negotiations. Franklin lacked basic understanding of critical terms in the Agreement and relied on Haak, an experience [*sic*] attorney for interpretation. Franklin's lack of negotiations and understanding raises significant questions regarding the validity of the Agreement.

ECF No. 34 at PageID.422.

Plaintiffs provide no legal authority supporting the contention that a contract is invalid when one of the signing parties has not participated in the contract's negotiations. Plaintiffs' arguments are similar to those made regarding contracts of adhesion, which are

> [C]haracterized by standardized forms prepared by one party which are offered for rejection or acceptance without opportunity for bargaining and under the circumstances that the second party cannot obtain the desired product or service except by acquiescing in the form agreement.

*Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 484 (2005) (quoting *Morris v. Metriyakool*, 418 Mich. 423, 440 (1984)). Contracts of adhesion are not deemed invalid solely because one party did not negotiate its terms. To the contrary, "[a]n "adhesion contract" is simply that: a *contract*. It must be enforced according to its plain terms unless one of the traditional contract defenses applies." *Id.* at 477 (emphasis in original). This includes defenses such as "waiver, fraud, or unconscionability." *Id.* at 491. Plaintiffs cannot challenge the validity of the Agreement solely because Franklin did not participate in the negotiation of its terms.

Plaintiffs further contend that the Agreement is invalid because Franklin "lacked basic understanding of critical terms." However, "one who signs a contract will not be heard to say, when enforcement is sought, that he did not read it, or that he supposed it was different in its terms." *Komraus Plumbing & Heating, Inc. v. Cadillac Sands Motel, Inc.,* 387 Mich. 285, 290

(1972); *see also Zurcher v. Herveat,* 238 Mich. App. 267, 299 (1999) ("It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms. Rather, the law presumes that the parties understand the import of a written contract and had the intention manifested by its terms.").

Plaintiffs' argument that the Agreement is invalid because he did not understand certain terms is without merit. Plaintiffs are not alleging that the Agreement contains ambiguities that would make its interpretation unclear. Nor does the Agreement contain specialized language or terms. Accordingly, Plaintiffs' arguments are rejected.

**2.**

Plaintiffs next claim that "Franklin relied on Haak's interpretation of critical terms [of the Agreement] to his detriment." ECF No. 34 at PageID.422. They claim that:

> Haak told Franklin if everything went well and Franklin's boxing ranking was up, they would negotiate new terms for an extension of the Agreement. Haak without any suggestion, discussion, or prompting from Franklin increased the Option $5,000, in order to garner trust and induce Franklin to sign the Agreement. Haak failed to inform Franklin that the Option is "unconditional," and would result in an automatic two year extension of the Agreement under the same terms and conditions.

ECF No. 34 at PageID.423.

Considering these allegations by Plaintiff would violate the parol evidence Rule. "[W]hen the language of a document is clear and unambiguous, interpretation is limited to the actual words used and parol evidence is inadmissible to prove a different intent." *Burkhardt v. Bailey*, 260 Mich. App. 636, 656 (2004) (citations omitted). Neither party has alleged that this provision of the Agreement is ambiguous. The Agreement provides:

> Boxer hereby grants to Manager an *unconditional* option to extend this Agreement an additional two years immediately following the aforementioned five year period upon payment by Manager to Boxer the sum of $25,000 on or

>before the expiration of the five year anniversary of this Boxer-Manager Agreement.[1]

ECF No. 18-2 (emphasis added). The Agreement explicitly states that that option is unconditional and describes the requirements of the option. Plaintiffs cannot now cast it into doubt by introducing oral statements allegedly made at the time of signing.

### 3.

Plaintiffs further argue that Defendant exerted undue influence over Franklin by abusing his relationship with Franklin. "Franklin from the start of the relationship placed his trust in Haak as a license [sic] manager and as an attorney." ECF No. 34 at PageID.423. However, prior to the parties executing the Agreement, Defendant was not Franklin's manager. The parties entered into the Agreement in order to make Defendant Franklin's manager.

Plaintiffs' pleadings do not allege that Haak has ever served as his counsel. To the contrary, Haak was a party with whom Franklin was contracting. A contracting party owes no duty to furnish legal advice or interpretations to the other contracting party. *See UAW v. N. Telecom, Inc.*, 434 F. Supp. 331, 336 (E.D. Mich. 1977) ("There is no duty to disclose between parties to an arm's length transaction, where no confidential relationship exists."); *Chiarella v. United States*, 445 U.S. 222, 228, (1980) ("[T]he duty to disclose arises when one party has information that the other [party] is entitled to know because of a fiduciary or other similar relation of trust and confidence between them.").

Plaintiffs further argue that Haak committed silent fraud. However, absent a duty to disclose, silence does not constitute misrepresentation. *U.S. Fid. & Guar. Co. v. Black*, 313

---

[1] On June 17, 2019, a stipulated order was docketed in which the parties agreed that Defendant could exercise the option by placing $25,000 in Defendant's counsel's client trust fund account. ECF No. 24 ("Because of complications outside of the Parties' control, the option shall be deemed to have been exercised upon the placement of the funds in Defendant's counsel's client trust fund account…where it shall remain until transferred to a third-party escrow account with Chase Bank.")

N.W.2d 77, 88 (Mich. 1981) ("In order for the suppression of information to constitute silent fraud there must be a legal or equitable duty of disclosure." (citing 37 Am. Jur. 2d, Fraud and Deceit § 146)). As explained above, Haak had no duty to disclose anything to Franklin because no fiduciary relationship existed between the two at the time of signing.

It is also unclear what Haak was expected to disclose. Plaintiffs are not alleging that Haak had a duty to disclose material information outside of the Agreement. Instead, they are arguing that he had a duty to tell Franklin that the option was unconditional, despite the fact that the Agreement explicitly states that the option is unconditional. Franklin signed the Agreement, demonstrating his consent to be bound by its terms.

**4.**

Plaintiffs next argue that the Agreement is invalid because it is unconscionable. A contract provision is deemed unconscionable when it is procedurally and substantively unconscionable. "Procedural unconscionability exists where the weaker party had no realistic alternative to acceptance of the term." *Clark v. Daimler Chrysler Corp.*, 268 Mich. App. 138, 144 (2005). "Where goods and services can only be obtained from one source (or several sources on non-competitive terms) the choices of one who desires to purchase are limited to acceptance of the terms offered or doing without." *Allen v. Michigan Bell Tel. Co.*, 18 Mich. App. 632, 637, (1969).

Plaintiffs contend that the Agreement is procedurally unconscionable because Franklin was the weaker party in the Agreement. ECF No. 34 at PageID.426. However, they do not claim that Defendant was the only person from whom they could obtain manager services. Franklin may have been the weaker party, but he gives no indication that Defendant was the only person he could hire to provide him management services. Accordingly, the Agreement was not procedurally unconscionable.

Even if the Agreement were procedurally unconscionable, Plaintiffs have not proved that the Agreement was substantively unconscionable. To be substantively unconscionable, a contract term must be substantively unreasonable. "However, a contract or contract provision is not invariably substantively unconscionable simply because it is foolish for one party and very advantageous to the other." *Clark.*, 268 Mich. App. At 144 (quoting *Gillam v. Michigan Mortgage–Investment Corp.*, 224 Mich. 405, 409 (1923)). Instead, the provision must be one where "the inequity of the term is so extreme as to shock the conscience." *Id.*

Plaintiffs argue that the Agreement is unconscionable because it only provides for Defendant's salary after the first year of the Agreement term (30% of Franklin's winnings), but it does not provide for Franklin's salary. The Agreement provides:

> Boxer's compensation.
>
> a. Manager will be paid 30% of all amounts derived by Boxer from any services Boxer may render under this Agreement.
>
> b. Manager hereby agrees to pay Boxer $10,000 at the time of the signing of this Agreement as a signing bonus
>
> c. Manager further agrees that during the first year of the contract, Manager will pay Boxer the sum of $1,200 per month on or before the first day of each month, commencing February 1, 2015, continuing through 2015, and concluding January 1, 2016 (12 payments).
>
> d. Manager agrees that during the first year of the contract, Boxer will have no duty to pay any share of any proceeds that Boxer receives from any services, that Boxer may render under this Agreement to Manager.
>
> e. Boxer acknowledges that Manager has no further responsibility to pay Boxer any money after the first year of the contract.
>
> f. Manager has no duty at any time to pay miscellaneous expenses including, but not limited to:
> - Training
> - Gas/mileage
> - Transportation
> - Insurance
> - Medical

Case 1:19-cv-10137-TLL-PTM   ECF No. 37   filed 05/12/20   PageID.490   Page 16 of 19

- Rent
- Equipment, etc.

ECF No. 18-2. Plaintiffs contend that the provision is substantively unconscionable because "[a]fter the first year of fighting under Haak's management, Franklin will receive NOTHING." ECF No. 34 at PageID.427 (emphasis in original).

The provision does not shock the conscious. It provides that during the first year, Defendant would pay Franklin a salary and Franklin would retain 100% of his winnings. After the first year, Franklin would no longer receive a salary, but would receive 70% of his winnings with 30% of the winnings being paid to Defendant for his services as Franklin's manager. It is reasonable for Defendant to receive 30% of Franklin's winnings. As explained in the Senate hearings on the Ali Act, a boxer typically "hires a manager and a trainer and generally…pays them a combined percentage of 33.3 percent of what the boxer receives for the fight." *Business Practices in the Professional Boxing Industry: Hearing on S. 2238 Before the S. Comm. On Commerce, Sci., and Transp.* 105th Cong. 29, at 9 (Mar. 24, 1998).

**5.**

Plaintiffs also take issue with the fact that Defendant based the Agreement on a boxer management form contract, but omitted certain boxer protections that the form contract originally contained. This information will not be considered because doing so would violate the parole evidence rule. Franklin did not sign and agree to be bound to the boxer management form contract. Instead, he signed and agreed to be bound to the Agreement.

**6.**

The Agreement is valid and enforceable. It is signed by both parties and Plaintiffs have not provided in either their pleadings or briefings sufficient allegations that displace that presumption.

By establishing that the Agreement is valid, the Court and the Parties can address the issue of whether the Agreement was breached.

**B.**

Defendant asks the Court to enter a declaratory judgment finding that "Franklin was not allowed to unilaterally terminate the Agreement." ECF No. 31 at PageID.389. Defendant correctly notes that "[b]ecause the boxer-manager contract has a fixed and definite term, it is not terminable at will." ECF No. 31 at PageID.390 (quotation omitted). As provided in the Court's previous order:

> [T]he Agreement does not provide that either party may unilaterally terminate the Agreement. Franklin signed the Agreement and its terms are as equally binding upon him as they are on the Defendant. Absent Plaintiffs demonstrating that the Defendant materially breached the Agreement, Defendant was and still remains Franklin's manager.

ECF No. 29 at PageID.368.

Defendant also correctly notes that "[r]epudiation of one's contractual obligations is allowed when the other party 'has committed a material breach.'" ECF No. 31 at PageID.390 (quoting *Walker & Co. v. Harrison*, 347 Mich. 630, 635 (1957). Because the Agreement does not contain a termination provision, Franklin could lawfully terminate the Agreement only if Defendant materially breached the Agreement.

In its previous order, the Court dismissed Plaintiffs' claim that Defendant breached the Agreement because "Plaintiffs [had] not identified the provisions of the Agreement Defendant [had] breached… Plaintiffs cannot sustain a breach of contract claim when the claim is not grounded in the contract itself." ECF No. 29 at PageID.362-63.

Defendant is now seeking to go a step further. Instead of simply finding that Plaintiffs' pleadings are inadequate, he asks that the Court find that Defendant did not breach the Agreement. In seeking declaratory judgment on his counterclaim, Defendant is acting as a counter-Plaintiff

and must prove that he did not breach the Agreement. Defendant must do more than rely on his characterization of Plaintiffs' inadequate pleading. Instead, he must present sufficient evidence that he did not materially breach the Agreement. Only then can he succeed in his claim for declaratory judgment.

Defendant has not met this burden. He agreed to certain responsibilities under the Agreement, including only receiving 30% of Franklin's winnings. It is possible that Plaintiffs' claim of failure to provide an accounting will produce material demonstrating that Defendant in fact retained more than he was due under the Agreement. This could be considered a material breach of the Agreement and thereby allow Franklin to lawfully terminate the contract. Until additional facts are furnished, the Court cannot determine whether Franklin was lawfully permitted to terminate the Agreement.

The inadequacies of Plaintiffs' pleadings alone do not prove that Defendant fulfilled his obligations under the Agreement. A declaratory judgment may not be entered solely on the parties' pleadings when the request relies upon significant factual information that will presumably be obtained during discovery. *See Zide*, 16 F. App'x at 437 ("The Declaratory Judgment Act empowers the district court to entertain certain actions, but it does not compel the court to exercise the jurisdiction thus granted to it."); *Commcations Unlimited Contracting Servs., Inc. v. Comdata, Inc.*, 2020 WL 606592, at *8 (M.D. Tenn. Feb. 7, 2020) ("Discretion not to hear a declaratory judgment action, even where jurisdiction exists, is undisputed.").

The Court will not enter a declaratory judgment finding that "Franklin is not permitted to unilaterally terminate the boxer-management contract." ECF No. 31 at PageID.382. Defendant's two remaining requests for declaratory judgment ask that the Court find that Haak "was and still remains Franklin's manager" and that "there are two years and 310 days remaining in the contract

- 19 -

term from entry of a declaratory judgment." ECF No. 31 at PageID.382. These remaining requests depend upon resolution of the question of whether Franklin was lawfully permitted to terminate the Agreement.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Declaratory Judgment, ECF No. 31, is **GRANTED IN PART** and **DENIED IN PART**. The Agreement is valid.


Dated: May 12, 2020                              s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge