UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

JERMAINE FRANKLIN JR.
JERMAINE FRANKLIN JR., INC.,

        Plaintiff and Counter-defendants,         Case No. 19-10137
                                                           Honorable David M. Lawson

v.

MARK F. HAAK,

        Defendant and Counter-plaintiff.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO ESCROW FUNDS

Plaintiff Jermaine Franklin, Jr. is a prize fighter, and defendant Mark Haak is his erstwhile manager. Early in his fighting career, Franklin signed a contract that gave Haak the exclusive right to manage Franklin's career for a fixed term. When Franklin became disappointed in the financial results of his labors, despite success in the ring, he attempted to extract himself from the arrangement, eventually filing the present lawsuit. Through many months of litigation, which included an intervening bankruptcy and a trip to the court of appeals, Haak has enjoyed some favorable rulings, which, he says, should lead to a final judgment that entitles him to compensation. One aspect of the recovery he seeks is a share of the purses Franklin has and will earn as a fighter. In the present motion, Haak asks the Court to order that 30% of the purse Franklin will earn from a fight that is scheduled for tomorrow be placed in escrow pending the entry of a final judgment in this case. Franklin opposes that relief. The motion is fully briefed, and oral argument will not assist in the determination of the motion. *See* E.D. Mich. LR 7.1(f)(2). Because Haak relies on principles of equity to support his escrow claim, and because he has not demonstrated irreparable harm to support his position, his motion will be denied.

I.

A.

In 2014, plaintiff Jermaine Franklin, Jr. — an amateur boxer from Michigan who had just won the United States Golden Gloves Championship — engaged defendant Mark F. Haak, a Pennsylvania attorney and boxing manager, to manage his prospective professional boxing career. They executed a "Boxer-Manager Agreement" (the "Agreement"), ECF No. 60, PageID.984, in which Franklin agreed that Haak would be his exclusive manager for a term of four-and-a-half years, subject to Haak's unilateral extension option. *Id.* at PageID.984–86. The Agreement granted Haak broad control over Franklin's professional activities and 30% of Franklin's fight earnings after the first year of the Agreement. *Ibid.* In exchange, the Agreement provided Franklin with specified compensation, including a signing bonus, a limited first-year salary, and a percentage of future earnings. *Ibid.* In the years that followed the Agreement's execution, Franklin compiled an undefeated 17–0 record as a heavyweight boxer. *Id.* at PageID.986.

Despite that success, Franklin grew dissatisfied with the relationship. He came to believe that he lacked meaningful control over his career, as Haak managed communications with promoters, and selected opponents and arranged bouts which were not advantageous to Franklin's career advancement. Financial tensions also emerged between the parties. Franklin earned relatively modest purses and struggled to support himself, while Haak maintained that he invested substantial sums, approximately $300,000, into Franklin's development. The investment covered training, travel, and related expenses as part of a long-term strategy to develop Franklin into a marketable fighter.

By 2018, the parties' relationship had broken down. Franklin sought to void the Agreement as unconscionable and unlawful, and requested an accounting of the parties' financial dealings.

Although Haak initially agreed to meet, no resolution followed.  When Franklin later entered an arrangement with a new promoter, Haak asserted that the Agreement remained in force and proclaimed continuing managerial authority over Franklin's career.  Haak publicly asserted his exclusivity over Franklin, both to the new promoter and to a television network, which effectively halted Franklin's opportunities, leaving the parties at an impasse and fomenting this dispute.

This litigation followed.  Franklin and his corporate entity, Jermaine Franklin Jr., Inc., filed this action on January 14, 2019, challenging the Agreement's enforceability.  The parties then stipulated to the entry of an order, which froze "any rights that [Haak] may have under a management contract or otherwise with [Franklin] . . . pending resolution of this lawsuit."  ECF No. 11, PageID.69.  Soon thereafter, the plaintiffs filed an amended complaint asserting ten claims under federal and state law, including a state-law claim for a breach of fiduciary duty.  ECF No. 18.  Haak moved to dismiss the amended complaint, and this Court's predecessor, the Honorable Thomas J. Ludington, granted that motion in large part, permitting only the state-law breach of fiduciary claim to proceed.  ECF No. 29.

Haak then filed an answer and counter-complaint advancing three claims: one for declaratory relief regarding the contract's enforceability; another for equitable estoppel; and a third for breach of the Agreement.

On February 4, 2020, Haak moved for judgment on the pleadings, seeking a declaration that (1) the Agreement was valid, (2) Franklin could not unilaterally terminate it, (3) Haak remained Franklin's manager, and (4) there were over two years left on the Agreement's term. Judge Ludington granted the motion in part, declaring that the Agreement was valid but declining to address the rest of Haak's requested relief until summary judgment.  ECF No. 37.

The parties then filed cross-motions for summary judgment.  Haak elected to address only declaratory relief in his motion.  He again sought a declaration that (1) Franklin may not unilaterally terminate the Agreement, (2) Haak remained Franklin's manager, and (3) 1,040 days remain on the Agreement's term from the entry of the final judgment.  *Id.* at PageID.1001.

The Court denied the plaintiffs' motion for summary judgment and granted in part Haak's motion for summary judgment.  The Court concluded that Haak was entitled to a declaration that Franklin may not unilaterally terminate the Agreement, and Haak remained Franklin's manager.  However, the Court determined that 837 days — not 1,040 — remained on the Agreement's term.  *Id.* at PageID.1011.  Neither party asked the Court to adjudicate the equitable estoppel or breach of contract counts in the counter-complaint.  The Court entered a declaratory judgment in Haak's favor on December 9, 2020, but it did not address the other two counts.  ECF No. 71.

Haak filed an appeal, arguing that the Court erred by determining that only 837 days remained on the Agreement's term.  While the appeal was pending, Franklin filed a bankruptcy petition, triggering an automatic stay of the appellate proceedings on July 9, 2021.

In bankruptcy court, the bankruptcy trustee sought to reject the Agreement under 11 U.S.C. § 365(a) as an executory contract, while Haak moved to dismiss the petition for bad faith.  *Haak v. Franklin*, 654 B.R. 255, 258 (E.D. Mich. 2023).  The bankruptcy court initially denied Haak's motion and permitted the bankruptcy trustee to reject the Agreement, concluding that dismissal for bad faith was not warranted.  *Ibid.*  But on appeal, the district court remanded for reconsideration, pointing to post-ruling boxing matches that may have suggested that Franklin had continued to earn substantial income and that he may have misstated his financial condition in bankruptcy court.  *Id.* at 265–66.  On remand, the bankruptcy court found that Franklin had pursued bankruptcy in bad faith to avoid his contractual obligations under the Agreement.  *In re Franklin*, No. 21-20657-

DOB, 2025 WL 2650110, at *1 (Bankr. E.D. Mich. Sept. 15, 2025).  It therefore dismissed Mr. Franklin's bankruptcy petition under 11 U.S.C. § 707(a).  *Id.* at *5.

After the bankruptcy court dismissed Mr. Franklin's petition, the United States Court of Appeals for the Sixth Circuit dissolved its stay of proceedings.  However, observing the district court never ruled on Haak's counterclaims for equitable estoppel and breach of contract, the court of appeals held that the appeal was not based on a final order or judgment, and therefore that court had no jurisdiction over the appeal.  *Id.* at PageID.1227.  The court dismissed the appeal and remanded the case to this Court on October 24, 2025.

After remand, Haak moved to dismiss his estoppel and breach-of-contract counts as moot and sought the entry of a final judgment.  ECF No. 90.  That motion remains pending.  Then, on February 10, 2026 Haak filed the present motion to place in escrow 30% of the proceeds from Mr. Franklin's upcoming fight on March 28, 2026 pending resolution of his motion for entry of judgment. ECF No. 94.  Contemporaneously, Mr. Franklin appealed the bankruptcy court's dismissal order to the district court.  *Franklin v. Haak*, Case No. 25-cv-13060 (E.D. Mich.).  That appeal remains pending.  *Ibid.*  The case was transferred to the undersigned on March 9, 2026.

B.

Counter-plaintiff Haak asks the Court to impound 30% of the fight purse and place it in escrow pending a resolution of the motion to enter final judgment.  He analogizes the request to preliminary injunctive relief and relies on a section of the Declaratory Judgment Act, 28 U.S.C. § 2022, which empowers district courts to grant "further necessary or proper relief" in aid of a declaratory judgment.  He reasons that impounding and escrowing 30% of the purse would give practical effect to a declaratory judgment by preserving the status quo and specific *res* to which the declaration allegedly attaches.  He says that injunctive-type relief is necessary because the

upcoming fight will generate significant proceeds, and based on Mr. Franklin's past conduct, those funds may not remain available without court intervention.  And he contends that the equities and the public interest are aligned, since escrowing the money would preserve the Court's ability to render meaningful relief and prevent a prevailing party's rights from becoming illusory through asset dissipation.

Franklin argues that the Court lacks the power to grant Mr. Haak's requested relief under *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999).  Haak, he says, identifies no equitable interest in a specific fund, only a disputed contractual expectancy, and therefore there is no specific "*res*" to "protect."  Franklin also faults the proposed compressed timeline, contending that expedited consideration would deny notice and hearing rights required by section 2202.  In addition, Franklin questions whether a judgment enforcing the Agreement should be entered after bankruptcy rejection and the alleged expiration of the Agreement, and he insists that the Agreement's term has since expired.  He believes that he should not have to share fighting purses until those issues are decided.  Nor, he contends, can Haak establish irreparable harm, because the asserted injury is purely financial and fully compensable by damages.  And Haak's delay in seeking relief — that is, waiting until February 2026 to seek relief when he knew of the fight in November 2025 —undercuts any claim of urgency.

## II.

A district court may issue a declaratory judgment in "a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a).  When a court does so, it may issue "[f]urther necessary or proper relief based on [its] declaratory judgment . . . after notice and hearing, against any adverse party whose rights have been determined by such judgment." 28 U.S.C. § 2202; *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 833 (6th Cir. 2019).  Such further relief "includes an

injunction." *Powell v. McCormack*, 395 U.S. 486, 499 (1969). When movants invoke an earlier-obtained declaratory judgment to preserve the status quo pending resolution of the remaining litigation, courts apply the preliminary injunction framework. *See, e.g.*, *Cyber Sols. Int'l, LLC v. Priva Sec. Corp.*, No. 1:13-CV-867, 2015 WL 5793248, at *1 (W.D. Mich. Oct. 1, 2015).

However, "[a] preliminary injunction is an extraordinary remedy," warranted only when the movant demonstrates that the circumstances clearly demand it. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). To establish its entitlement to a permanent injunction, the moving party must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Courts describe the preliminary injunction inquiry as a balancing test, *see Certified Restoration Dry Cleaning Network, LLC v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007), and it is often said that demonstration of a strong likelihood of success generally is a predominating factor, *Wilson v. Williams*, 961 F.3d 829, 844 (6th Cir. 2020); *Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 689 (6th Cir. 2014) ("the likelihood of success on the merits often will be the determinative factor."). However, because injunctive relief is a creature of equity, "even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'" *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

A.

Before undertaking the factor balancing, we pause for a moment to address Franklin's contention that *Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), undercuts the Court's authority to entertain Haak's request to escrow part of Saturday's purse. It does not.

*Grupo* held that district courts possess no power to issue preliminary injunctions barring a party from transferring general assets "in which no lien or equitable interest is claimed" to secure "a general money judgment." *Id.* at 310, 333. In so holding, the Supreme Court reasoned that historically, absent a judgment entitling the movant to a specific asset, a movant "could not interfere with" nonmoving parties' use of their assets. *Id.* at 319–21.

Here, however, Haak's request for relief focuses on a specific fund of money. He does not seek to impose a general asset-transfer freeze to protect a future money judgment without asserting an existing interest, like in *Grupo*. Instead, he purports only to bar Franklin from disposing of specific funds that allegedly fall within his already-obtained judgment, pending final disposition of his counterclaims. Moreover, the Sixth Circuit has permitted broader preliminary asset-transfer freezes when the moving party has already obtained a judgment, preserving assets within the scope of that judgment. *See McGirr v. Rehme*, 891 F.3d 603, 610-15 (6th Cir. 2018). However, as discussed below, Haak has not obtained a judgment yet. But that does not change the *nature* of the relief he seeks.

B.

Turning to the balancing task, it is more likely than not that Haak will succeed in jettisoning his claims for equitable estoppel and breach of contract, clearing the way to obtain a clean, final declaratory judgment. It is unclear why he wants to do that, however, since the essence of what

he seeks to recover is his share of the past and future earnings from Franklin's prize fights, which he claims as a result of Franklin not honoring the Agreement.  The declaratory judgment by itself will not achieve that end for him unless he also obtains ancillary relief from the Court under 28 U.S.C. § 2022.  And that ancillary relief would mirror the recovery he would hope to obtain under the breach-of-contract count of his counterclaim.  Moreover, it is not at all clear when a final judgment would issue.  Recall that Franklin has appealed the results of the latest bankruptcy adversary proceeding, which calls into question the viability of the Agreement that the bankruptcy sought to renounce as an executory contract.  Prudence suggests that the bankruptcy appeal should be resolved before the motion to enter a final declaratory judgment is decided.

But even if Haak shows a likelihood of success on the merits, he stumbles over the essential factor of demonstrating irreparable harm.  In seeking to embargo 30% of the purse from the upcoming fight, Haak is attempting to sequester a fund from which he might recover when enforcing his anticipated declaratory judgment — a judgment that has not even been entered yet. That relief is entirely monetary.  A movant "does not suffer irreparable injury if the injury is fully compensable by money damages." *Apex Tool Grp., LLC v. Wessels*, 119 F. Supp. 3d 599, 610 (E.D. Mich. 2015) (citing *Overstreet*, 305 F.3d at 578); *Manakee Professional Medical Transfer Serv. v. Shalala,* 71 F.3d 574, 581 (6th Cir. 1995) ("Monetary damages do not generally constitute irreparable harm.").

Generally, an injury is fully compensable by monetary damages unless "the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).  But there has been no such showing here.  Further, when monetary damages can sufficiently remedy a harm, absent a showing of fraud, *Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 628 (6th Cir. 2013), fear of asset dissipation before final judgment does not

constitute irreparable harm, *Barrette Outdoor Living, Inc. v. Michigan Resin Representatives*, LLC, No. 11-13335, 2014 WL 1516197, at \*2-3 (E.D. Mich. Apr. 17, 2014) (citing *Grupo*, 527 U.S. at 308); *Residential Fin. Corp. v. Jacobs*, No. 13-1167, 2014 WL 682486, at \*3 (S.D. Ohio Feb. 21, 2014).

Haak's counterclaim is focused on two main objectives: he wants the Court to declare that the Agreement is valid and enforceable; and then he wants to enforce it, that is, he wants his share of the proceeds of Franklin's past and future (for a few more months, at least) fights. Because Haak has no judgment yet, his effort to escrow the funds payable to Franklin by the fight promoter collides with "the substantive rule that a general creditor (one without a judgment) ha[s] no cognizable interest, either at law or in equity, in the property of his debtor, and therefore could not interfere with the debtor's use of that property." *Grupo*, 527 U.S. at 319-20.

In *Black Mountain Equities, Inc. v. Pac. Gold Corp.*, No. 12-01285, 2012 WL 5986488, (D.N.J. Nov. 27, 2012), the court explained that even when a claimant brings equitable claims that might support injunctive relief, *Grupo*'s rationale still undercuts irreparable harm findings in breach-of-contract cases where the claimant seeks to freeze assets prejudgment. *Id.* at \*10–12. There, as here, the preliminary injunction motions were "couched in equitable terms," but they were functionally "an attempt to secure a money judgment." *Id.* at \*11.

Haak's motion at its core is an attempt to set aside funds from which to satisfy a judgment that has not been entered yet. And there are issues to be decided — here and in the bankruptcy appeal — before a judgment can be settled. And remember that under the parties' stipulation, Mr. Haak's rights are held in abeyance until this case is resolved. In tandem, the Agreement's term does not run during the pendency of this litigation, and Mr. Haak's ability to collect proceeds is likewise suspended during that period. In all events, his showing of irreparable harm — an

essential element on a claim for an injunction and by extension for escrowing the plaintiff's money here — comes up short.

### III.

Counter-plaintiff Mark Haak has not established a sufficient basis to support his request for an order that 30% of the purse that Jermaine Franklin will earn from a fight that is scheduled for tomorrow be placed in escrow pending the entry of a final judgment in this case.

Accordingly, it is **ORDERED** that the motion to escrow funds (ECF No. 94) is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  March 27, 2026